# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KENNETH COX, JR.

        Plaintiff,

                                   **CASE NO. 2:06-CV-13407**

   v.                              **JUDGE GERALD E. ROSEN**

                                   **MAGISTRATE JUDGE PAUL KOMIVES**

ANDREW JACKSON, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON: (1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #31); (2) DEFENDANT CORRECTIONAL MEDICAL SERVICES'S MOTION TO DISMISS (docket #44); and (3) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (docket #6)

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *MDOC Defendants' Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.    *Summary Judgment Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          2.    *Claims against MDOC (Eleventh Amendment)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          3.    *Claims Against Defendant Pramstallar (Res Judicata/Collateral Estoppel)* . . . . . . . . . . . 8
          4.    *Eighth Amendment Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
               a. Eighth Amendment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               b. Defendant Howard's Failure to Authorize a White Cane . . . . . . . . . . . . . . . . . . . . . . 13
               c. Defendant Powell's Failure to Provide a Reading and Writing Assistant . . . . . . . . . . 14
               d. Defendant Burton's Failure to Permit Early Meal Detail . . . . . . . . . . . . . . . . . . . . . . 14
          5.    *Retaliation/Grievance/Access to Courts Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               a. Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               b. Access to Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               c. Defendant White's Handling of Plaintiff's Grievances . . . . . . . . . . . . . . . . . . . . . . . 18
          6.    *ADA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     C.    *Defendant CMS's Motion to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          1.    *Constitutional Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          2.    *ADA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     D.    *Plaintiff's Motion for Preliminary Injunction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
     E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1

I.    RECOMMENDATION: The Court should grant in part and deny in part the MDOC defendants' motion for summary judgment, grant defendant CMS's motion to dismiss, and deny plaintiff's motion for preliminary injunction.

II.    REPORT:

A.    *Background*

Plaintiff Kenneth Gerald Cox is a state prisoner who, at the times relevant to this action, was incarcerated at the Mound Road and Riverside Correctional Facilities. Plaintiff commenced this action on July 27, 2006, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's complaint raises claims of deliberate indifference to his medical needs in violation of the Eighth Amendment and retaliation in violation of the First Amendment. Plaintiff also appears to assert claims under the Americans with Disabilities Act (ADA). Specifically, plaintiff alleges:

>    Plaintiff Cox arrived at the Reception and Guidance Center (R&GC) in Jackson, Michigan, on or about March 6, 2001. In April of that year he was given an eye exam at Duane Waters (Prison) Hospital Eye Clinic, because he is an insulin dependent diabetic. The Optometrist who conduct the exam informed him that blood vessels were ruptured at the backs of both eyes. An appointment was scheduled with Dr. Dastair, a specialist who is not named in this lawsuit but who may be called as a witness in this and another pending lawsuit. Dr. Dastair performed laser surgery on both eyes, several times each, during the months of May and July, 2001.
>    Due to deliberate indifference of MDOC Health Care staff at several prison facilities since the onset of treatment in May of 2001, Plaintiff is now legally blind. He filed a lawsuit pursuant to 42 U.S.C. § 1983. That case is pending in docket no. 1:06-cv-10350.[1]
>    Plaintiff has suffered violations to his U.S. Constitutional rights by various Corrections personnel, in addition to the neglect Plaintiff has suffered at the hands of health care staff, and he continues to suffer. This lawsuit addresses the constitutional violations that have occurred since he filed the first lawsuit. Each Defendant involved herein has acted with deliberate indifference to Plaintiff's needs and rights under the First and/or Eighth Amendments to the United States Constitution and/or American[s]

---

[1]Although that case was pending at the time plaintiff filed his complaint, the case has since been dismissed. *See Cox v. Correctional Medical Servs., Inc.*, No. 1:06-CV-10350 (E.D. Mich. Sept. 26, 2007) (Lawson, J.).

with Disabilities Act (ADA). In many cases Defendants have demonstrated that their actions are in retaliation for Plaintiff having filed the original lawsuit and/or grievances he has written. Each Defendant has acted under color of state law.

Compl., at 1-2.

Plaintiff's complain then lists 22 separate defendants, with a brief statement relating to each defendant's role in the alleged deprivation of plaintiff's constitutional rights. Defendants are: Mound Correctional Facility (NRF) Warden Andrew Jackson; NRF Deputy Warden Scott Nobles; NRF Assistant Deputy Warden Cornell Howard; NRF Assistant Deputy Warden Darrell Stewart; NRF Grievance Coordinator Stanley White; NRF Classification Director Jeffries; NRF Resident Unit Manager Clarence Powell; NRF Health Care Unit Manager Ruth Ingram; NRF Nurse Supervisor Justina Nzums; Dr. Seetha Vadlamudi; Dr. George Pramstaller, Chief Medical Officer for the Bureau of Health Care Services; Cheryl Worthy, dietician at NRF; Correctional Officer Burton; Riverside Correctional Facility (RCF) Warden Carmen Palmer; RCF Deputy Warden Dingelday; RCF Assistant Deputy Warden Gary Ball; RCF Health Unit Manager Karmen Blount; Ms. Black, Classification Director at RCF; Dave DeGraff, Health Care Nursing Supervisor at RCF; RCF Transfer Coordinator Yokom; Correctional Medical Services, Inc. ("CMS"); and the Michigan Department of Corrections ("MDOC").

Plaintiff has also attached to his complaint a number of grievances against these defendants. It appears that plaintiff seeks to incorporate by reference the claims made in those grievances. Construed liberally, these grievances raise the following specific claims beyond the general claims of deliberate indifference and retaliation set forth in the body of the complaint:

- deliberate indifference by defendant Howard for failing to timely provide a white cane per his medical accommodation (Grievance No. NRF 05-06-695-06E);

- deliberate indifference by defendants Jackson, Powell, and MDOC for failing to honor his medical accommodation for reading and writing assistance (Grievance No. NRF

05-09-1078-17Z);

- violation of the ADA by defendant Jeffries for failing to provide plaintiff with an appropriate prison job (Grievance No. NRF 05-09-1133-06E);

- deliberate indifference by defendants Vadlamudi and CMS in the provision of health care to plaintiff (Grievance No. NRF 05-09-1129-12D3);

- deliberate indifference by defendants MDOC, Jackson, Steward, Pramstallar, Ingram, and CMS in connection with the denial of medical treatment for an abdominal hernia (Grievance No. NRF 05-09-1183-28A);

- deliberate indifference by defendants CMS, Vadlamudi, Ingram, and Nzums in connection with the denial of orthopaedic shoes (Grievance No. NRF 05-10-1303-12Z);

- deliberate indifference by defendants CMS, Vadlamudi, Ingram, and Nzums in connection with a failure to provide medication (Grievance No. NRF 05-11-1419-12F);

- deliberate indifference by defendants Worth and Burton by their denial of an early meal detail (Grievance No. NRF 05-11-1405-17Z);

- harassment and denial of early meal detail by defendant Burton in retaliation for the previous grievance relating to this issue (Grievance No. NRF 05-12-1508-17B);

- failure by defendants Jackson, Nobles, and Steward to respond to his grievances, and failure of defendant White to provide him Step II grievance appeal forms (Grievance No. NRF 05-12-1560-11G);

- retaliation for filing grievances by defendants MDOC, CMS, Palmer, Dingelday, Ball, Blount, Black, DeGraff, and Yokom (Grievance No. RCF 06-01-027-28E); and

- retaliation for filing grievances by defendants Jackson, Nobles, Steward, Powell, and White, by failing to respond to his request for an accounting statement regarding his prison account and by failing to provide Step II appeal forms (Grievance No. NRF 06-02-148-17B).

*See* Compl., Exs. GG-LL; Def.'s Br. in Supp. of Mot. for Summ. J., Exs. 4-11.

The matter is currently before the Court on three motions filed by the parties. On October 3, 2007, plaintiff filed a motion for injunctive relief. Plaintiff seeks an injunction requiring defendants

4

to provide him with proper medical treatment for his abdominal hernia. The MDOC defendants[2] filed a response on December 7, 2007, and defendant CMS filed a response to the motion on December 14, 2007. Plaintiff filed a reply on December 17, 2007.

Second, the MDOC defendants filed a motion for summary judgment on December 3, 2007. The MDOC defendants argue that they are entitled to summary judgment because: (1) plaintiff's claim relating to the accounting statement fails to state a claim; (2) plaintiff cannot establish deliberate indifference on the part of defendant White with respect to plaintiff's cane; (3) plaintiff has failed to state a claim against defendant White with respect to his handling of plaintiff's grievances; (4) plaintiff has failed to state an ADA claim against defendant Jeffries; (5) plaintiff has failed to state a claim upon which relief may be granted with respect to defendant Powell's failure to provide a reading and writing assistant; (6) plaintiff's claims against defendant Pramstallar are barred by res judicata or collateral estoppel; (7) plaintiff's allegations against defendant Burton relating to the early meal detail fail to state a claim upon which relief may be granted; (8) plaintiff's retaliatory transfer claim against defendants Palmer, Dingelday, Blount, and Yokom fail as a matter of law; (9) plaintiff's claims against defendant MDOC are barred by the Eleventh Amendment; and (10) the individual defendants are entitled to qualified immunity. Plaintiff filed a response to the motion on January 4, 2008.

Third, on December 18, 2008, defendant CMS filed a motion to dismiss. Defendant CMS argues that it is entitled to dismissal because: (1) plaintiff has failed to properly exhaust his administrative remedies with respect to his claims against defendant CMS; (2) it cannot be held

---

[2]As used in this Report, "the MDOC defendants" refers collectively to defendants Howard, Steward, White, Pramstallar, Burton, Palmer, Dingeldey, Ball, Yokom, Nobles, Jeffries, and MDOC, all of whom are represented by the Michigan Attorney General. CMS is represented by separate counsel. As of the date of this Report, it does not appear that the remaining defendants have been served.

vicariously liable for any constitutional violations; (3) plaintiff's retaliation claims fail to allege any adverse action taken by defendant CMS; (4) plaintiff's ADA claims against CMS fail because it is not a "public entity" under the ADA; and (5) plaintiff's claims relating to the treatment he received for his eyes are barred by res judicata or collateral estoppel.  Plaintiff filed a response to this motion on January 8, 2008, and defendant CMS filed a reply on January 17, 2008.

B.      *MDOC Defendants' Motion for Summary Judgment*

        1.      *Summary Judgment Standard*

        Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

        "The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

2.      *Claims against MDOC (Eleventh Amendment)*

With respect to plaintiff's claims against the MDOC, the Court should conclude that these claims are barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468,

472-73 (1987) (plurality opinion). This immunity is based on a two part presupposition: (1) each state is a sovereign entity; and (2) "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed. 1961); *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Hans*, 134 U.S. at 13. Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986).

"Because the MDOC is a state agency and the State of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity." *Sims v. Michigan Dep't of Corrections*, 23 Fed. Appx. 214, 215 (6th Cir. 2001). The MDOC is immune from plaintiff's claims both for monetary damages and injunctive relief. *See Seminole Tribe*, 517 U.S. at 58 (citing *Cory v. White*, 457 U.S. 85, 90 (1982)) ("[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). Accordingly, the Court should grant defendants' motion with respect to plaintiff's claims against defendant MDOC.

3.      *Claims Against Defendant Pramstallar (Res Judicata/Collateral Estoppel)*

Defendants next argues that plaintiff's claims against defendant Pramstallar are barred by res judicata or collateral estoppel. The Court should disagree.

As the Sixth Circuit has explained, the concept of res judicata actually encompasses two distinct concepts. *See Heyliger v. State Univ. & Community College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. Oct. 3, 1997); *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Claim preclusion, or "true" res judicata, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced

in an earlier suit." *Heyliger*, 126 F.3d at 852 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984))); *see also*, *J.Z.G. Resources*, 84 F.3d at 214. Issue preclusion, or collateral estoppel, on the other hand, mandates that "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Heyliger*, 126 F.3d at 853 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).[3] The preclusive effect of a prior federal court judgment is governed by federal common law. *See EB-Bran Productions v. Warner*, 242 Fed. Appx. 311, 312 (6th Cir. 2007) (citing *Blonder-Tongue Labs., Inc. v. University of Ill. Foundation*, 402 U.S. 313, 324 n.12 (1971); RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982)).

Under federal common law, "[a] claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (internal quotation omitted). A claim is barred by collateral estoppel if the following elements are met: "1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; 2) determination of the issue must have been necessary to the outcome of the prior proceeding; 3) the prior proceeding must have resulted in a final judgment on the merits; 4) the party

---

[3]In *Heyliger*, the Sixth Circuit "'express[ed] [the] hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings have become so convoluted.'" *Heyliger*, 126 F.3d at 852 (quoting *Barnes*, 848 F.2d at 728 n.5). Accordingly, I refer to the issues by those terms.

against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."

To the extent that plaintiff's claims against defendant Pramstallar are based on the alleged failures to properly treat his eye condition, defendants' estoppel argument would have some merit. However, the only mention of defendant Pramstallar in plaintiff's current complaint is in connection with Grievance No. NRF 05-09-1183-28A. And the only claim raised in that grievance is a claim that the defendants named in that grievance, including defendant Pramstallar, failed to properly treat his abdominal hernia. The hernia claim was not raised in the plaintiff's prior complaint, and thus the issue was not determined in the prior action, rendering issue preclusion inapplicable here. Nor was the issue raised in the prior action under the third element of the claim preclusion test. Thus, claim preclusion applies only if the hernia claim should have been raised in the prior action. For purposes of claim preclusion, there is an identity of claims only if the claims arise out of the same transaction or series of transactions, or if the claims arise out of the same core of operative facts *See Browning*, 283 F.3d at 773-74. Here, plaintiff's hernia claim relates to an entirely different medical condition than the condition at issue in plaintiff's prior suit. It therefore neither arises out of the same transaction nor concerns the same core of operative facts. Thus, plaintiff's hernia-related claim against defendant Pramstallar is not barred by claim preclusion. *Cf. Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 406-07 (9th Cir. 1985).

4.     *Eighth Amendment Claims*

Defendants next contend that they are entitled to summary judgment on plaintiff's Eighth Amendment claims.

*a. Eighth Amendment Standard*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right,

privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S.

at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a

substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

### b. Defendant Howard's Failure to Authorize a White Cane

Defendants first contend that they are entitled to summary judgment with respect to plaintiff's claim that defendant Howard was deliberately indifferent to his medical needs by failing to approve a white cane for plaintiff so that he could maneuver safely in the prison. The response to plaintiff's grievance on this matter indicates that plaintiff was provided an accommodation for the cane on May 8, 2005, and that he received the cane on July 8, 2005. Plaintiff has presented no allegations or evidence to rebut this information, nor has he alleged any facts showing how the delay in receiving his cane because it had to be ordered from outside the prison demonstrates deliberate indifference to his medical needs. Likewise, plaintiff has not alleged any injury or harm arising from the delay in receiving the cane. *See Napier v. Madison County*, 238 F.3d 739, 741 (6th Cir. 2001). Accordingly, the Court should conclude that defendants are entitled to summary judgment on this claim.

### c. Defendant Powell's Failure to Provide a Reading and Writing Assistant

Defendants next argue that they are entitled to summary judgment with respect to plaintiff's claims alleging that defendant Powell failed to accommodate plaintiff's blindness by providing a reading and writing assistant. Plaintiff does not allege how a reading and writing assistant is related to his medical needs such that the failure to provide one amounted to deliberate indifference. Thus, to the extent that plaintiff's claim is based on the Eighth Amendment, the claim is without merit.[4]

### d. Defendant Burton's Failure to Permit Early Meal Detail

Plaintiff also alleges that defendant Burton did not allow him to go to early meal, as required by his diabetes. However, the response to the grievance relating to this matter, which plaintiff does not rebut, indicates that defendant Worthy, the prison dietician, determined that because plaintiff does not take insulin before lunch, he had no need for an early meal detail. Regardless of whether defendant Worthy's denial of an early meal detail was proper,[5] defendant Powell was entitled to rely on Worthy's opinion and the lack of an early meal detail in denying plaintiff's request for an early meal. In short, "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also*, *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Absent specific evidence that defendant Burton was in any way responsible for denying plaintiff's request for an early meal detail, plaintiff cannot establish that defendant Burton was deliberately indifferent to his medical needs. *See Franklin v. Gilless*, 870 F. Supp. 792, 796 (W.D. Tenn. 1994); *Thomas v. Rufo*, No. 92-10261-Z, 1994 WL 175047, at *4 (D. Mass. Apr. 20, 1994). Accordingly, the Court should conclude that

---

[4]To the extent this claim raises issues relating to access to courts and the ADA, those issues are discussed below.

[5]It appears from the record that defendant Worth has not yet been served in this case.

defendants are entitled to summary judgment on this claim.

5.    *Retaliation/Grievance/Access to Courts Claims*

Plaintiff alleges that defendants retaliated against him for filing grievances by failing to timely provide his accounting statement, denying him reading and writing assistance and early meal detail, and transferring him.  Plaintiff also alleges that defendants failed to properly handle his grievances, and interfered with his access to courts by failing to timely provide the accounting statement and denying him reading and writing assistance.  The Court should conclude that defendants are entitled to summary judgment with respect to these claims.

*a.  Retaliation*

In order to succeed on his retaliation claim, plaintiff must establish three elements:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.).  However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*. at 399.

Here, plaintiff merely alleges that the defendants took various actions against him in retaliation for his having filed grievances.  He does not, however, allege any specific facts showing a causal connection between defendants' actions and his filing of grievances.  And the evidence in the record belies plaintiff's claim of retaliation.  For example, the grievance response relating to the reading and writing assistant indicates that a health consultation at TLC Eye Care indicated that plaintiff was not legally blind and therefore that a special accommodation was not medically necessary.  Similarly, the response to plaintiffs' grievance concerning the early meal detail indicates that, because plaintiff did

not take insulin before lunch, an early meal detail was not medically necessary. While plaintiff may disagree with these reasons, he has presented no allegations or evidence from which it could be inferred that defendants' stated reasons were mere pretext to hide unlawful retaliation, apart from his conclusory assertion of retaliation. Such "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted). Accordingly, the Court should conclude that plaintiff's retaliation claims fail as a matter of law, and that defendants are entitled to summary judgment on these claims.

### b. Access to Courts

Construed liberally, plaintiff's complaint also raises claims that he was denied his right of access to the courts by defendants' failure to timely provide an account statement, and failure to provide reading or writing assistance. Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983)*.* A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart*

*v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied access to the courts.") (internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Here, plaintiff does not allege in his complaint, nor do his attached grievances set forth, any facts showing that he suffered a specific, litigation related harm by defendants' failure to timely provide an accounting statement or reading and writing assistance. As the Supreme Court has explained, to establish an access to courts claim

> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations much describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff has failed to allege with particularity any claims he has lost as a result of defendants' conduct, nor has he offered anything to show that he is now being thwarted in his effort to obtain any relief in court. At most, plaintiff's generalized allegations establish only that the his pursuit of legal remedies was delayed or made more difficult by defendants' actions. Such allegations fail to state a viable access to courts claim, as "[s]tanding

17

alone, delay and inconvenience do not rise to the level of a constitutional deficiency." *Griffin v. DeTella*, 21 F. Supp. 2d 843, 847 (N.D. Ill. 1998); *see also*, *Winburn v. Howe*, 43 Fed. Appx. 731, 733 (6th Cir. 2002); *Purkey v. Green*, 28 Fed. Appx. 736, 742 (10th Cir. 2001). Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's access to courts claims.

### c. *Defendant White's Handling of Plaintiff's Grievances*

Plaintiff also alleges that defendant White improperly handled his grievances. Even if true, plaintiff's allegations do not establish a constitutional violation. Nothing in the Constitution requires a state to establish a prison grievance system, nor to investigate or respond to grievances submitted pursuant to prison policy. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 644 (6th Cir. 2003); *Miller v. Bock*, 55 Fed. Appx. 310, 311-12 (6th Cir. 2003); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Accordingly, the Court should conclude that defendants' are entitled to summary judgment on plaintiff's grievance related claims.

### 6. *ADA Claims*

Plaintiff's complaint, again construed liberally, raises claims under the Americans with Disabilities Act against both the MDOC and various individual defendants, in connection with the denial of a cane and a reading/writing assistant, as well as in the denial of a prison job. The Court should conclude that defendants are entitled to summary judgment on these ADA claims.

At the outset, plaintiff's ADA claims are all governed by Title II of the Act, the title which governs discrimination by public entities. More specifically, plaintiff's claim that he was denied an appropriate prison job does not fall within the general employment discrimination provisions set forth in Title I of the ADA. *See Battle v. Minnesota Dep't of Corrections*, 40 Fed. Appx. 308, 309 (8th Cir. 2002); *Murdock v. Washington*, 193 F.3d 510, 512 (7th Cir. 1999). Accordingly, I consider plaintiff's

claims only under Title II of the ADA.

Title II of the ADA provides, in relevant part, that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act further provides, however, that "[t]he term 'public entity' means–(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). "Public entity" under the Act does not include an individual prison official, and thus plaintiff fails to state a claim against the individual defendants under the ADA. *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (Roberts, J.); *Damron v. North Dakota Comm'r of Corrections*, 299 F. Supp. 2d 970, 976 (D.N.D. 2004), *aff'd*, 127 Fed. Appx. 909 (8th Cir. 2005). Accordingly, the individual defendants are entitled to summary judgment with respect to plaintiff's ADA claims.

With respect to plaintiff's ADA claims against the MDOC, the Court should conclude that those claims fail as a matter of law.[6] To establish a Title II violation, plaintiff must allege and show that (1) he has a disability; (2) he is otherwise qualified to receive the benefit or service at issue; and

---

[6]Defendants suggest that the MDOC is entitled to Eleventh Amendment immunity with respect to plaintiff's ADA claims. However, the ADA explicitly abrogates the states' Eleventh Amendment immunity, and whether this abrogation of immunity is valid with respect to the particular claims presents a complicated issue which is not fully briefed by the parties. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (establishing case-specific, three part test for determining whether Eleventh Amendment bars a plaintiff's ADA claims against a state entity). Because plaintiff's allegations fail to state a claim for relief in any event, I do not consider the Eleventh Amendment issue here.

(3) he is being excluded from participation in, being denied the benefit of, or being subjected to discrimination in the provision of, the services, programs, or activities of the public entity because of his disability. *See Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005). Here, even assuming that plaintiff can establish the first two elements, he cannot establish the third element with respect to any of his claims.

With respect to the cane, the record establishes that plaintiff was not, in fact, denied a cane. Rather, there was a delay in providing the cane to plaintiff while his need for the cane was determined and it was ordered from an outside vendor. This delay does not amount to a denial of services under Title II of the ADA. *See Kiman v. New Hampshire Dep't of Corrections*, 451 F.3d 274, 285 (1st Cir. 2006); *cf. Moore v. Curtis*, 68 Fed. Appx. 561, 563 (6th Cir. 2003) (allegation of isolated instances of failing to accommodate disabled prisoner's condition does not state a claim under the ADA). Likewise, with respect to the prison job, the record does not support plaintiff's allegation that he was denied a job on the basis of his disability; on the contrary, the grievance response to this indicates that petitioner was provided with prison employment. While he may not have received the job that he desired, nothing in the record indicates that the denial of his preferred job was because of his alleged disability, and plaintiff otherwise had no "right to prison employment or a particular prison job." *Jewell v. Leroux*, 20 Fed. Appx. 375, 377 (6th Cir. 2001). Finally, plaintiff cannot establish that he was denied any prison service or program as a result of defendants' refusal to provide him a reading and writing assistant, because he does not allege that the failure to have such an assistant made him unable to participate in any prison service or program. Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's ADA claims.

C.    *Defendant CMS's Motion to Dismiss*

Defendant CMS also seeks dismissal, although it seeks dismissal under Rule 12(b)(6) rather

than summary judgment under Rule 56. However, because the Court has been presented with and I have considered matters outside the pleadings, I will treat the motion as one for summary judgment. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

1.    *Constitutional Claims*

With respect to plaintiff's constitutional claims, the Court should conclude that defendant CMS is entitled to summary judgment because plaintiff has failed to allege any personal involvement by CMS in the alleged deprivations of his constitutional rights.

Although plaintiff purports to bring his claims against defendant CMS, he does not allege any actions by CMS rather than by CMS employees. However, CMS cannot be held vicariously liable for the actions of its employees. It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). Thus, for example, in the context of a municipality, a plaintiff cannot establish the municipality's liability unless he shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). This rule of municipal liability applies equally to private corporations that are deemed state actors for purposes of § 1983. *See Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *see also*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citing cases); *Dashley v. Correctional Med. Servs., Inc.*, 345 F. Supp. 1018, 1021 (E.D. Mo. 2004). Thus, "CMS, although clearly a state actor and therefore a proper party to this § 1983 action, cannot be held vicariously liable for the actions of its agents . . . . Hence,

CMS's liability must . . . be premised on some policy that caused a deprivation of [plaintiff]'s Eighth Amendment rights." *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. Mar. 26, 2001).

Here, plaintiff has no allegation that the alleged failures of CMS personnel resulted from any policy of CMS, or from CMS's own deliberate indifference. Plaintiff complains of discreet acts by prison and medical personnel. These allegations are insufficient to state a claim that CMS was itself involved in the alleged deprivation of plaintiff's rights. *See Dashley*, 345 F. Supp. 2d at 1022. Accordingly, the Court should conclude that defendant CMS is entitled to summary judgment with respect to plaintiff's constitutional claims against it.

2.    *ADA Claims*

To the extent that plaintiff brings his ADA Title II claims against defendant CMS, defendant is entitled to summary judgment because Title II does not apply to CMS. As noted above, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act further provides, however, that "[t]he term 'public entity' means–(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). Defendant CMS is neither a state or local government, nor a department, agency, or instrumentality of the state. A private contractor does not become a "public entity" under Title II merely be contracting with a governmental entity to provide governmental services. *See Green v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006); *O'Connor v. Metro Ride, Inc.*, 87 F. Supp. 2d 894, 900 (D. Minn. 2000). Thus, CMS is not a "public

entity" under § 12131 and is therefore not subject to suit under Title II.  *See Wynott v. Correctional Medical Servs., Inc.*, No. 08-61-P-S, 2008 WL 2061385, at *2 (D. Me. May 13, 2008); *Pitts v. Hayman*, No. 07-2256, 2008 WL 1776568, at *10 n.5 (D.N.J. Apr. 16, 2008).  Accordingly, the Court should conclude that defendant CMS is entitled to summary judgment with respect to plaintiff's ADA claims.

D.     *Plaintiff's Motion for Preliminary Injunction*

Finally, the Court should deny plaintiff's motion for a preliminary injunction.

1.     *Legal Standard*

"In the exercise of its discretion with respect to a motion for preliminary injunction, a district court must give consideration to four factors:  '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see also*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).  "'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.2001)); *see also*, *Taubman Co.*, 319 F.3d at 774. Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.  Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also*, *Michigan State AFL-CIO*

*v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Further, as the Supreme Court has held, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). Thus, "[t]he threat of irreparable harm is a sine qua non for granting preliminary injunctive relief." *Christie-Spencer Corp. v. Hausman Realty Co., Inc.*, 118 F. Supp. 2d 408, 423 (S.D.N.Y. 2000); *accord Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002); *see also*, *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) ("A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction.").

Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiff may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate his entitlement to injunctive relief.

With respect to the likelihood of success factor, plaintiff need not show that he is sure to prevail on any of his claims. However, he must, "at a minimum, show[] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir.

1997) (internal quotation omitted); *see also*, *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823

F.2d 984, 988 & n.2 (6th Cir. 1987). With respect to the harm factor, the harm that would result in

the absence of the injunction must be irreparable, not merely substantial. As the Supreme Court has

noted,

> "The key word in this consideration is *irreparable*. Mere injuries, however
> substantial, in terms of money, time and energy necessarily expended in the absence
> of a stay, are not enough. The possibility that adequate compensatory or other
> corrective relief will be available at a later date, in the ordinary course of litigation,
> weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259

F.2d 921, 924 (D.C. 1958)). In short, "[a] plaintiff's harm from the denial of a preliminary injunction

is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. In

evaluating the harm facing the plaintiffs, the Court must evaluate three factors: "(1) the substantiality

of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided."

*Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

Finally, in addition to these four factors which govern all preliminary injunctions, plaintiffs'

suit challenging the conditions of confinement is subject to § 802 of the Prison Litigation Reform Act,

which in relevant part provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary
> to correct the harm the court finds requires preliminary relief, and be the least intrusive
> means necessary to correct that harm. The court shall give substantial weight to any
> adverse impact on public safety or the operation of a criminal justice system caused
> by the preliminary relief and shall respect the principles of comity set out in paragraph
> (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).[7]

---

[7]The referenced principles of comity prevent a court from ordering "any prospective relief that
requires or permits a government official to exceed his or her authority under State or local law or
otherwise violates State or local law, unless–(i) Federal law requires such relief to be ordered in violation

2.        *Analysis*

Here, plaintiff seeks a preliminary injunction requiring defendants to treat his abdominal hernia through surgery. The Court need not consider all four preliminary injunction factors, because plaintiff has failed to show a likelihood of success on the merits.

To succeed on an Eighth Amendment claim, plaintiffs must show that defendants were deliberately indifferent to the health or safety of the inmates. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "For injunctive relief, the plaintiff[] must show that the defendants were, at the time of the suit, 'knowingly and unreasonably disregarding an objectively intolerable risk of harm and that they will continue to do so.'" *Laube v. Haley*, 234 F. Supp. 2d 1227, 1242 (M.D. Ala. 2002) (quoting *Farmer*, 511 U.S. at 846). Here, the evidence does not support plaintiff's contention that doctors at Detroit Receiving hospital recommended surgery for his condition. On the contrary, the discharge instructions provided to plaintiff stated only that "[s]urgery is the treatment for many hernias. You and your doctor will decide the best treatment for you." Pl.'s Mot., Ex. EE. Further, plaintiff's own affidavit and attached exhibits establish that plaintiff was seen for his hernia condition on several occasions and prescribed treatment or restrictions. While plaintiff disagrees with the medical providers regarding the necessity of surgery to repair his hernia, such disagreement alone does not establish deliberate indifference, and plaintiff has presented no other evidence that defendants, or any other medical personnel, were deliberately indifferent to the serious medical needs related to his hernia. "If the plaintiff[] desire[s], [he] may renew [his] motion for such relief when [he] can provide additional information to the court [regarding his treatment]." *Laube*, 234 F. Supp. at 1243. "Until the plaintiff[] provide[s] such information, however, the court cannot find a substantial likelihood

---

of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(B).

exists [he] will meet [the elements] of [his] Eighth Amendment claim," *id.*, or that he will suffer irreparable harm in the absence of an injunction. Accordingly, the Court should deny plaintiff's motion for a preliminary injunction.[8]

E.    *Conclusion*

In view of the forgoing, the Court should grant in part and deny in part the MDOC defendants' motion for summary judgment; grant defendant CMS's motion to dismiss; and deny petitioner's motion for preliminary injunction. More specifically, the Court should grant summary judgment to defendants on: (1) all of plaintiff's claims against defendant MDOC; (2) all of plaintiff's claims against defendant CMS; (3) all of plaintiff's ADA claims against the individual defendants; (4) plaintiff's Eighth Amendment claim against defendant Howard relating to his cane; (5) plaintiff's Eighth Amendment claim against defendant Powell relating to a reading and writing assistant; (6) plaintiff's Eighth Amendment claim against defendant Burton relating to his early meal detail; and (7) all of plaintiff's retaliation, access to courts, and grievance related claims.[9]

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

---

[8]This conclusion is buttressed by the fact that plaintiff does not seek a preliminary injunction to preserve the parties' current positions, but to obtain affirmative relief. As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking such preliminary injunctive relief most be more closely scrutinized than the already-disfavored motion for preliminary junction which seeks to maintain the status quo. *See id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988).

[9]If the Court accepts this recommendation, it will be up to the parties in the first instance to further flesh out the claims which remain. I note that, at a minimum, plaintiff's Eighth Amendment claim relating to his hernia, and his claims against the yet to be served defendants, will remain pending if the Court adopts my report, as defendants have not moved for summary judgment with respect to these claims.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives _____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/28/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 28, 2008.

s/Eddrey Butts \_\_\_\_\_
Case Manager