UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENNETH COX, JR.

       Plaintiff,

                              CASE NO. 2:06-CV-13407
v.                             JUDGE GERALD E. ROSEN
                              MAGISTRATE JUDGE PAUL KOMIVES

ANDREW JACKSON, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT PRAMSTALLAR'S MOTION FOR SUMMARY JUDGMENT (docket #66)

I.      RECOMMENDATION: The Court should grant defendant Pramstallar's motion for summary judgment.

II.     REPORT:

A.     *Procedural Background*

Plaintiff Kenneth Gerald Cox is a state prisoner who, at the times relevant to this action, was incarcerated at the Mound Road and Riverside Correctional Facilities. Plaintiff commenced this action on July 27, 2006, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's complaint raises claims of deliberate indifference to his medical needs in violation of the Eighth Amendment and retaliation in violation of the First Amendment. Plaintiff also appears to assert claims under the Americans with Disabilities Act (ADA). Specifically, plaintiff alleges:

> Plaintiff Cox arrived at the Reception and Guidance Center (R&GC) in Jackson, Michigan, on or about March 6, 2001. In April of that year he was given an eye exam at Duane Waters (Prison) Hospital Eye Clinic, because he is an insulin dependent diabetic. The Optometrist who conduct the exam informed him that blood vessels were ruptured at the backs of both eyes. An appointment was scheduled with

1

>  Dr. Dastair, a specialist who is not named in this lawsuit but who may be called as a witness in this and another pending lawsuit. Dr. Dastair performed laser surgery on both eyes, several times each, during the months of May and July, 2001.
>  Due to deliberate indifference of MDOC Health Care staff at several prison facilities since the onset of treatment in May of 2001, Plaintiff is now legally blind. He filed a lawsuit pursuant to 42 U.S.C. § 1983. That case is pending in docket no. 1:06-cv-10350.[1]
>  Plaintiff has suffered violations to his U.S. Constitutional rights by various Corrections personnel, in addition to the neglect Plaintiff has suffered at the hands of health care staff, and he continues to suffer. This lawsuit addresses the constitutional violations that have occurred since he filed the first lawsuit. Each Defendant involved herein has acted with deliberate indifference to Plaintiff's needs and rights under the First and/or Eighth Amendments to the United States Constitution and/or American[s] with Disabilities Act (ADA). In many cases Defendants have demonstrated that their actions are in retaliation for Plaintiff having filed the original lawsuit and/or grievances he has written. Each Defendant has acted under color of state law.

Compl., at 1-2.

Plaintiff's complaint then lists 22 separate defendants, with a brief statement relating to each defendant's role in the alleged deprivation of plaintiff's constitutional rights. Defendants are: Mound Correctional Facility (NRF) Warden Andrew Jackson; NRF Deputy Warden Scott Nobles; NRF Assistant Deputy Warden Cornell Howard; NRF Assistant Deputy Warden Darrell Stewart; NRF Grievance Coordinator Stanley White; NRF Classification Director Jeffries; NRF Resident Unit Manager Clarence Powell; NRF Health Care Unit Manager Ruth Ingram; NRF Nurse Supervisor Justina Nzums; Dr. Seetha Vadlamudi; Dr. George Pramstaller, Chief Medical Officer for the Bureau of Health Care Services; Cheryl Worthy, dietician at NRF; Correctional Officer Burton; Riverside Correctional Facility (RCF) Warden Carmen Palmer; RCF Deputy Warden Dingelday; RCF Assistant Deputy Warden Gary Ball; RCF Health Unit Manager Karmen Blount;

---

[1]Although that case was pending at the time plaintiff filed his complaint, the case has since been dismissed. *See Cox v. Correctional Medical Servs., Inc.*, No. 1:06-CV-10350 (E.D. Mich. Sept. 26, 2007) (Lawson, J.).

Ms. Black, Classification Director at RCF; Dave DeGraff, Health Care Nursing Supervisor at RCF; RCF Transfer Coordinator Yokom; Correctional Medical Services, Inc. ("CMS"); and the Michigan Department of Corrections ("MDOC").

Plaintiff has also attached to his complaint a number of grievances against these defendants. It appears that plaintiff seeks to incorporate by reference the claims made in those grievances. Construed liberally, these grievances raise the following specific claims beyond the general claims of deliberate indifference and retaliation set forth in the body of the complaint:

- deliberate indifference by defendant Howard for failing to timely provide a white cane per his medical accommodation (Grievance No. NRF 05-06-695-06E);

- deliberate indifference by defendants Jackson, Powell, and MDOC for failing to honor his medical accommodation for reading and writing assistance (Grievance No. NRF 05-09-1078-17Z);

- violation of the ADA by defendant Jeffries for failing to provide plaintiff with an appropriate prison job (Grievance No. NRF 05-09-1133-06E);

- deliberate indifference by defendants Vadlamudi and CMS in the provision of health care to plaintiff (Grievance No. NRF 05-09-1129-12D3);

- deliberate indifference by defendants MDOC, Jackson, Steward, Pramstallar, Ingram, and CMS in connection with the denial of medical treatment for an abdominal hernia (Grievance No. NRF 05-09-1183-28A);

- deliberate indifference by defendants CMS, Vadlamudi, Ingram, and Nzums in connection with the denial of orthopaedic shoes (Grievance No. NRF 05-10-1303-12Z);

- deliberate indifference by defendants CMS, Vadlamudi, Ingram, and Nzums in connection with a failure to provide medication (Grievance No. NRF 05-11-1419-12F);

- deliberate indifference by defendants Worth and Burton by their denial of an early meal detail (Grievance No. NRF 05-11-1405-17Z);

- harassment and denial of early meal detail by defendant Burton in retaliation for the previous grievance relating to this issue (Grievance No. NRF 05-12-1508-17B);

- failure by defendants Jackson, Nobles, and Steward to respond to his grievances, and failure of defendant White to provide him Step II grievance appeal forms (Grievance No. NRF 05-12-1560-11G);

- retaliation for filing grievances by defendants MDOC, CMS, Palmer, Dingelday, Ball, Blount, Black, DeGraff, and Yokom (Grievance No. RCF 06-01-027-28E); and

- retaliation for filing grievances by defendants Jackson, Nobles, Steward, Powell, and White, by failing to respond to his request for an accounting statement regarding his prison account and by failing to provide Step II appeal forms (Grievance No. NRF 06-02-148-17B).

*See* Compl., Exs. GG-LL; Def.'s Br. in Supp. of Mot. for Summ. J., Exs. 4-11.

On August 28, 2008, I filed a Report addressing three then-pending motions filed by the parties: (1) plaintiff's October 3, 2007, motion for injunctive relief; (2) the December 3, 2007, motion for summary judgment filed by the MDOC defendants[2]; and (3) defendant CMS's December 18, 2007, defendant CMS filed a motion to dismiss.[3]  In that Report, I recommended that the Court grant CMS's motion to dismiss, deny plaintiff's motion for injunctive relief, and grant in part and deny in part the MDOC defendants' motion for summary judgment.  Specifically, I recommended that the Court grant summary judgment to defendants on: (1) all of plaintiff's claims against defendant MDOC; (2) all of plaintiff's claims against defendant CMS; (3) all of plaintiff's ADA claims against the individual defendants; (4) plaintiff's Eighth Amendment claim against defendant Howard relating to his cane; (5) plaintiff's Eighth Amendment claim against defendant Powell relating to a reading and writing assistant; (6) plaintiff's Eighth Amendment claim against defendant

---

[2]As used in this Report, "the MDOC defendants" refers collectively to defendants Howard, Steward, White, Pramstallar, Burton, Palmer, Dingeldey, Ball, Yokom, Nobles, Jeffries, and MDOC, all of whom are represented by the Michigan Attorney General.  CMS is represented by separate counsel. As of the date of this Report, it does not appear that the remaining defendants have been served.

[3]On September 22, 2008, I filed a Corrected Report & Recommendation which corrected some typographical errors in the initial Report.

Burton relating to his early meal detail; and (7) all of plaintiff's retaliation, access to courts, and grievance related claims. I further noted that, if the Court accepted this recommendation, it would be the parties' responsibility in the first instance to flesh out the claims which remain, but that at a minimum plaintiff's Eighth Amendment claim relating to his hernia and his claims against the yet to be served defendants would remain. On September 29, 2008, the Court entered an Order adopting my Report, and dismissing all of plaintiff's claims against CMS and the MDOC defendants, with the exception of plaintiff's Eighth Amendment claim relating to the treatment of his hernia asserted against defendant Pramstallar. With respect to this latter claim, defendants' motion for summary judgment argued solely that plaintiff's hernia-related claim was barred by *res judicata*, and did not address the merit of the claim.

The matter is currently before the Court on defendant Pramstallar's motion for summary judgment with respect to plaintiff's hernia-related Eighth Amendment claim, filed on October 13, 2008. Defendant Pramstallar argues that there is no genuine issue of material fact with respect to whether he was deliberately indifferent to plaintiff's serious medical needs, and therefore that he is entitled to judgment as a matter of law. Plaintiff initially filed a response to the motion on October 28, 2008, and defendant Pramstallar filed a reply on November 12, 2008. In the meantime, on October 24, 2008, I entered an Order conditionally granting plaintiff's motion for appointment of counsel. Attorney Alan Gilchrist having agreed to accept *pro bono* assignment in the matter, I entered an order assigning counsel and providing counsel further time to file a response to defendant Pramstallar's motion on April 15, 2009. Plaintiff, through counsel, filed a supplemental response to defendant's motion on July 15, 2009, and an addendum to the supplemental response on July 17, 2009.

B.      *Factual Background Relating to the Instant Motion*

The basic facts underlying plaintiff's hernia-related claim are not in dispute. On October 12, 2005, plaintiff sent a letter to various prison officials[4] complaining of his medical treatment. With respect to his hernia, plaintiff claimed in the letter that he had discussed the issue with Dr. Valmundi and that he was being denied the surgery needed to correct his hernia. He claimed that he was suffering pain and a burning sensation, and that it felt like his stomach was going to explode. *See* Pl.'s Addendum, Ex. B. On November 12, 2005, plaintiff was treated in the emergency department of Detroit Receiving Hospital. The discharge instructions indicated that plaintiff had an abdominal hernia and stated: "Surgery is the treatment for many hernias. You and your doctor will decide the best treatment for you." Pl.'s Mot. for Prelim. Inj., Ex. EE. A subsequent CMS Notice of Emergency Department Visit recommended "f/u [follow-up] with surgery." Pl.'s Addendum, Ex. C. On March 21, 2006, CMS approved plaintiff for a barium enema to treat his constipation and abdominal pain. *See* Pl.'s Supp. Resp., Ex. A. Plaintiff was also approved for and received an abdominal wrap for his hernia. *See* Pl.'s Mot. for Prelim. Inj., Ex. EE. Plaintiff was seen at the Detroit Medical Center on November 19, 2007. The discharge instructions recommend follow-up appointments with plaintiff's primary care physician in five weeks and with general surgery in six weeks. *See* Pl.'s Supp. Resp., Ex. A.

C.      *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4]The letter indicates the recipients as Warden Jackson, Deputy Warden Noble, Assistant Deputy Warden Steward, and Administrative Assistant Konieczki. The first three were named as defendants in plaintiff's complaint.

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

D.    *Eighth Amendment Standard*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to

scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697,

700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

10

E.      *Analysis*

Plaintiff contends that defendant Pramstallar's refusal to authorize surgery to repair his abdominal hernia evinces deliberate indifferent to his serious medical needs. Defendant Pramstallar responds that there is no evidence from which deliberate indifference can be inferred, that plaintiff's condition has been treated through pain management and an abdominal wrap, and that plaintiff's complaint amounts to no more than a disagreement with his treatment. The Court should conclude that plaintiff has failed to present sufficient evidence of defendant Pramstallar's deliberate indifference to raise a genuine issue of material fact and survive summary judgment.

There is no evidence in the record which suggests deliberate indifference on the part of defendant Pramstallar. As noted above, there is no dispute that plaintiff has been receiving, and continues to receive, treatment for his condition. At most, plaintiff can show only that he and defendant differed over the proper course of treatment. However, these sorts of conflicts between a prisoner and his medical providers fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976). As the Supreme Court made clear in *Estelle*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care (such as medical malpractice) cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 107. In the medical context, therefore, mere negligence, or even gross negligence, is insufficient to establish an Eighth Amendment violation. "Where a prisoner has

11

received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976). Thus, allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06; *see also*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. Aug. 4, 1999) (en banc). Thus, even if plaintiff's claim against defendant may rise to the level of negligence or malpractice, it does not rise to the level required to establish deliberate indifference to a serious medical need.

Plaintiff's only evidence of deliberate indifference is his assertion that outside treating physicians twice recommended surgery. While it is true that deliberate indifference may be shown where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner," *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992), plaintiff has presented no evidence that this is this case because the discharge instructions do not, in fact, recommend that plaintiff in fact receive surgery. The November 12, 2005, discharge instructions from Detroit Receiving Hospital do not recommend surgery or indicate that plaintiff's treating doctors indicated surgery as an appropriate treatment. The discharge instructions merely state, in form language, that "[s]urgery is the treatment for many hernias. You and your doctor will decide the best treatment for you." Pl.'s Mot. for Prelim. Inj., Ex. EE. The subsequent CMS Notice of Emergency Department Visit recommending "f/u [follow-up] with surgery," Pl.'s Addendum, Ex. C, does not recommend that surgery, but is more naturally read (particularly in light of the Detroit Receiving Hospital instructions) as recommending follow-up with

12

a surgeon–that is, a surgical consultation. Likewise, the Detroit Medical Center November 19, 2007, discharge instructions do not recommend surgery itself, but follow-up *appointments* with plaintiff's primary care physician in five weeks and with a general surgeon in six weeks. *See* Pl.'s Supp. Resp., Ex. A. There is no evidence, and petitioner does not claim, that he was not provided with follow-up care or the opportunity to discuss his need for surgery with his primary care physicians at the prison. In short, the medical records fail to show that any physician actually recommended surgery as an appropriate and necessary treatment, rather than merely recommended further exploration of a surgical option. Thus, plaintiff cannot show that defendant Pramstallar "deliberately ignore[d] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Hamilton*, 981 F.2d at 1066. *See Manley v. Mazzuca*, No. 01CV5178, 2007 WL 162476, at *9 (S.D.N.Y. Jan. 19, 2007) (no deliberate indifference where, although there was mention of surgery as a possible course of treatment, the medical records failed to show "that Plaintiff's desired surgery was actually prescribed.").

In short, there is no evidence in the record that defendant Pramstallar has deliberately ignored or failed to treat plaintiff's hernia, or ignored the advice of any treating doctor. Rather, the evidence shows a difference of medical opinion or, at most, negligence on the part of defendant Pramstallar. Because such a difference of medical opinion or negligence is insufficient to show that defendant Pramstallar was deliberately indifferent to plaintiff's medical needs, the Court should grant defendant Pramstallar's motion for summary judgment.

F.     *Conclusion*

In view of the foregoing, the Court should grant defendant Pramstallar's motion for summary judgment.

13

III.	NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


						s/Paul J. Komives
						PAUL J. KOMIVES
						UNITED STATES MAGISTRATE JUDGE
Dated: 8/11/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on August 11, 2009.
>
> 						s/Eddrey Butts
> 						Case Manager